UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

LAURA RIVERA-CAPELES,

        Plaintiff,

v.                                                                  Case No. 18-C-1286

ANDREW SAUL,
Commissioner of Social Security,

        Defendant.

**DECISION AND ORDER**

Plaintiff Laura Rivera-Capeles filed this action for judicial review of the final decision of the Commissioner of Social Security denying her application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. Plaintiff contends that the decision of the administrative law judge (ALJ), which became final after the Appeals Council denied Plaintiff's request for review, R. 1–3, was erroneous for three reasons: (1) the ALJ improperly evaluated the opinions of Plaintiff's treating providers; (2) the ALJ's residual functional capacity assessment (RFC) determination did not account for Plaintiff's variable functioning or limitations from fibromyalgia; and (3) the ALJ's credibility determination misstates the record and ignores entire lines of evidence. For the reasons stated below, the Commissioner's decision will be reversed and remanded.

**BACKGROUND**

Plaintiff previously applied for SSI and Disability Insurance Benefits in October 2012, and an ALJ found that she was not disabled on July 20, 2015. R. 101–16. Plaintiff did not appeal that

decision. Plaintiff filed the present application for SSI on July 31, 2015, alleging disability beginning on July 21, 2015, due to back issues, anxiety, social withdrawal, bipolar disorder, blood clots, GERD, sleep apnea, mood disorder, myalgia, obesity, and personality changes. R. 13, 264, 284. After her application was denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ. R. 124, 140, 181. ALJ Koren Mueller conducted a hearing on July 11, 2017, at which Plaintiff, who was represented by counsel, and a vocational expert (VE) testified. R. 28–54.

At the hearing, Plaintiff testified that she received a bachelor's degree in accounting when she lived in Puerto Rico. R. 33. Her most recent work occurred in 2012, also in Puerto Rico. R. 41–42. She testified that she was fired because her mental health problems resulted in too many absences. *Id.* In 2013, the year after she moved to the United States, Plaintiff attempted to work but stopped after two days because of pain and mental problems. R. 34, 42. Plaintiff described the type of work she performed in the past as secretarial. R. 34–35. When asked what prevents her from working, Plaintiff testified that she has pain all over her body, including constant lower back pain and pain in her hands and fingers; has paranoid schizophrenia, major depression, hallucinations (visual and auditory, including voices encouraging self-harm and harm to others), and bipolar disorder; loses her temperament, leading her to curse, threaten people, and get physical; has low energy and difficulty concentrating; and experiences swelling in her feet that requires her to elevate her feet at heart height. R. 35–37, 39–41, 43–45.

As for daily living, Plaintiff testified that she makes breakfast, goes to doctor appointments, goes grocery shopping, washes dishes, goes to church, and sometimes drives. R. 46–47. She testified that she uses a prescribed cane to walk, can sit for about an hour before needing to stand,

and can stand in the same spot for about ten minutes. R. 47–48. She estimated that, during an eight-hour daytime period, she is lying down for around three hours. R. 41. At the time of the hearing, it had been about three years since she left her house alone. R. 38. Plaintiff testified that, in fall 2014 and early 2015, she was hospitalized twice due to suicidal thoughts. R. 38–39. She estimated that, as a result of her depression, she experiences ten days in a typical month where she does not attend to her personal cares, stays in bed most of the day, and does not leave the house. R. 36, 45.

In a written decision dated October 3, 2017, the ALJ concluded that Plaintiff had not been disabled as defined in the Social Security Act since her application date of July 31, 2015. R. 21. To reach this conclusion, the ALJ followed the Social Security Administration's (SSA's) five-step sequential evaluation process. *See* R. 14–15. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since July 31, 2015. R. 15. At step two, the ALJ found that Plaintiff had the following severe impairments: lumbar spondylosis with radiculopathy, obesity, gout, anxiety, depression, and schizophrenia. *Id.* At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairment that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 16.

After consideration of the whole record, the ALJ determined that Plaintiff had the RFC to "perform sedentary work as defined in 20 C.F.R 416.967(a) except the claimant is able to complete simple, routine tasks involving simple work related decisions with few workplace changes and no fast paced productivity requirements. She can occasionally interact with the general-public, coworkers and supervisors." R. 17. At step four, the ALJ noted that Plaintiff had no past relevant work. R. 20. At step five, the ALJ determined that there exist jobs in the national economy in

significant numbers that Plaintiff could perform, such as circuit board assembler, cutter, and document specialist. *Id.*

## LEGAL STANDARD

The Commissioner's decision will be upheld if the ALJ applied the correct legal standards and supported the decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is "such relevant evidence as a reasonable mind could accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

Additionally, the ALJ is expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 737–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationale offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

## ANALYSIS

Plaintiff first contends that the ALJ failed to properly evaluate the opinions of her treating sources. Under the regulations applicable to Plaintiff's application, the ALJ must give a treating

source's medical opinion on the nature and severity of the claimant's impairments "controlling weight" if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in . . . [the] record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); SSR 96–2p. If an ALJ gives the treating source's opinion lesser weight, the ALJ must articulate "good reasons" for doing so. §§ 404.1527(c)(2), 416.927(c)(2). In such a case, "the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion" in determining the weight to give the medical opinion. §§ 404.1527(c), 416.927(c); *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009).

Plaintiff highlights several assessments from treating providers in the record. In a September 2014 assessment, Dr. Zittergruen opined that Plaintiff would be off task 10% of the workday; would work at 50% of the efficiency of the average worker; and could sit or stand/walk a total of less than two hours in an eight-hour day. R. 374–77. In another September 2014 assessment, advanced practice nurse practitioner (APNP) Nikki Kroner opined that Plaintiff would likely need to lie down for one hour each eight-hour day due to fatigue; would withdraw from work tasks and have intermittent verbal outbursts of anger once each week; be absent more than four days per month due to her impairments, with an additional three days each month where she would not leave the house due to panic/anxiety attacks, suspiciousness/paranoia, and delusions/hallucinations; require two to three unscheduled work breaks each day due to a need to isolate, fatigue, paranoia, hallucinations/delusions, panic/anxiety, and intrusive thoughts; would be off task 25% of the workday; and would work at 50% of the efficiency of the average worker. R. 378–81.

5

In a February 2016 mental impairment assessment, Dr. William Reyes, Plaintiff's treating psychologist, opined that Plaintiff would need to lie down for three or more hours each day due to fatigue; would withdraw from work tasks and have an anxious mood several times each workweek; miss work more than four days each month due to her mental limitations; require four to five unscheduled breaks each workday due to panic/anxiety, fatigue, and a need to isolate; be off task more than 20% of the workday; and work with less than 50% of the efficiency of an average worker. R. 1164–67.

In a letter dated March 8, 2017, Kroner stated that Plaintiff's conditions were in a partially remitted state and, with adherence to medications and psychotherapy, she "could perform appropriately in a low-stress, non labor intensive work environment with a part-time schedule doing simple tasks under the guidance and with the support of flexible managerial oversight in 12-18 months. At this point in treatment, however, I do not see her capable of functioning in an occupational setting." R. 1174.

Plaintiff argues that the ALJ entirely ignored Kroner's March 2017 letter, constituting reversible legal error. *See* 20 C.F.R. § 416.927 ("Regardless of its source, we will evaluate every medical opinion we receive."); *Samuel v. Barnhart*, 295 F. Supp. 2d 926, 946 (E.D. Wis. 2003) ("[A]n ALJ may not completely ignore the report of a treating source . . . . When an ALJ fails to discuss such an important piece of evidence he not only fails to 'give good reasons' for his decision as required by the regulations, 20 C.F.R. § 404.1527(d)(2), he makes it impossible for the reviewing court to tell whether the evidence was rejected or simply overlooked." (collecting cases)). The Commissioner acknowledges that "the ALJ did not explicitly weigh Ms. Kroner's March 2017 opinion" but argues that "any error was harmless because remand would result in the same

outcome—the ALJ would afford Ms. Kroner's updated opinion little weight for the same reasons he discounted her September 2014 opinion, in which she similarly opined that Plaintiff was unable to work." Def.'s Br., Dkt. No. 19, at 7.

As an initial matter, Plaintiff is mistaken that Kroner is a "treating source" under the application regulations. A "treating source" must be an "acceptable medical source." 20 C.F.R. § 416.927(a)(2). The ALJ identifies Kroner as a "nurse practitioner," R. 19, and Kroner signs as an APNP. R. 381, 1174. For an application filed prior to March 27, 2017, neither a nurse practitioner nor an APNP qualifies as an "acceptable medical source" that can be considered a "treating source" capable of receiving controlling weight. 20 C.F.R. § 416.902(a); *Turner v. Astrue*, 390 F. App'x 581, 586 (7th Cir. 2010) ("A nurse-practitioner, moreover, is not a 'treating source.'"); SSR06–03P (listing "nurse practitioners" as an "other source" that is not an "acceptable medical source"); *Esquibel v. Berryhill*, No. 1:18-CV-159-JPK, 2019 WL 1594339, at *4 (N.D. Ind. Apr. 15, 2019). The ALJ therefore did not err in failing to give Kroner's March 2017 opinion controlling weight.

Nor did the ALJ otherwise err in evaluating Kroner's March 2017 opinion. In discussing the treating source opinions, the ALJ noted that "[a]nother source stated that the claimant is unable to work (Exhibit 22F), which is a determination reserved to the Commissioner." R. 19. Although the ALJ cited to Exhibit 22F, R. 1164–67, that citation is likely a clerical error, as Exhibit 22F is the medical impairment assessment of Dr. Reyes. The ALJ likely intended to cite to Exhibit 24F, R. 1173–74, which contains two letters, one from Kroner and one from Dr. Raymond Ballecer. The "source" to whom the ALJ referred in the above-quoted statement was likely Dr. Ballecer, as the ALJ had previously identified Kroner as a "nurse practitioner" and it would not make sense to again

7

refer to Kroner as "another source." R. 19. Plaintiff is therefore likely correct that the ALJ did not explicitly evaluate Kroner's March 2017 opinion.

But this omission is harmless. While the ALJ has a "duty to acknowledge potentially dispositive evidence," *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 767 (7th Cir. 2003), Kroner's March 8, 2017 opinion is hardly dispositive. Not only is Kroner not a treating source entitled to special consideration, but also Kroner's letter contains the same defect as does Dr. Ballecer's letter (also dated March 8, 2017): opining on whether Plaintiff is able to work, which is a determination reserved to the Commissioner. *See* § 416.927(d); *Laabs v. Berryhill*, No. 16-C-1424, 2018 WL 1470172, at *4 (E.D. Wis. Mar. 26, 2018). Dr. Ballecer's letter contains a bare assertion that Plaintiff is unable to work, and aside from listing Plaintiff's then-current regimen of medications and speculating as to when Plaintiff could work with adherence to the treatment plan, Kroner's letter is similarly bare. As such, there is little doubt that the ALJ would reject Kroner's March 2017 opinion. Remand on this basis is therefore not required. *See Pepper v. Colvin*, 712 F.3d 351, 361 (7th Cir. 2013) ("[W]e will not remand a case for further specification when we are convinced that the ALJ will reach the same result." (citation omitted)).

The ALJ nevertheless erred, however, in failing to give good reasons for giving Dr. Reyes' opinion little weight. When evaluating Dr. Reyes' opinion alongside Plaintiff's other treating source opinions (and that of Kroner), the ALJ stated: "The extreme statements in these opinions are not consistent with the record as a whole. While the claimant had deficits on exam, the claimant received conservative management of her physical and mental conditions that did not support the extent of these allegations (Exhibit B15F, Exhibit B25F and Exhibit B28F)." R. 19. The ALJ

further noted: "There was no evidence of hospitalizations or more intensive treatment for mental or physical conditions." *Id.*

The ALJ's reasoning presents several problems. First, the absence of hospitalizations after Plaintiff's alleged onset date is not a "good reason" for discounting a medical opinion. *See Bartell v. Cohen*, 445 F.2d 80, 83 (7th Cir. 1971) ("Obviously, hospitalization is cogent evidence that an applicant is disabled; however, the absence of hospitalization for degenerative arthritis is not substantial evidence that an applicant can perform a specific occupation."). While Plaintiff's depression and anxiety differs from the arthritis in *Bartell*, the same principle in *Bartell* applies here. Indeed, the absence of hospitalizations is even far less probative here than in a case of arthritis given Plaintiff's testimony that her depression prevents, rather than induces, her to leave home. R. 36, 45.

Second, the ALJ impermissibly cherry-picked evidence to discount Dr. Reyes' opinion. *See Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011). While it is true that "the probative value of medical evidence prior to the claimant's onset date may be significantly lessened when it is at odds with medical evidence collected after the claimant's onset date," *Clayborne v. Astrue*, No. 06C6380, 2007 WL 6123191, at *5 (N.D. Ill. Nov. 9, 2007); *see also Groves v. Apfel*, 148 F.3d 809, 810–11 (7th Cir. 1998), the ALJ glossed over Plaintiff's multiple hospitalizations due to suicidal and homicidal ideation and depressed mood and affect in late 2014 and early 2015, just months prior to Plaintiff's alleged onset date. Merely presenting these hospitalizations and the numerous other treatment notes during that time reflecting Plaintiff's recurrent mental health symptoms as "a history of psychiatric treatment" says nothing of their probative value, even if little. R. 18.

9

The ALJ used the same technique on Plaintiff's treatment records. When discussing these records, the ALJ noted that, in July 2015, Plaintiff "had a psychological appointment with her nurse practitioner. She received medication and psychotherapy, and she reported everything was doing well." *Id.* The ALJ further noted that Plaintiff "said she gets depressed one day per week" and "reported fluctuating moods to this [sic] a licensed professional counselor in August [2015]." *Id.* To support the conclusion that "[t]he records showed her mental conditions were managed with treatment such as medication and therapy," the ALJ noted that, in October 2015, Plaintiff "reported fluctuating moods, but her mental status exam was normal despite symptoms of paranoid schizophrenia and anxiety," that she had "similar findings and treatment at subsequent appointments," and that, despite mood fluctuations, "her mood was generally controlled with this treatment, and there was no indication that more intensive treatment was needed for her mental impairments." *Id.*

But the treatment records also show that: (1) Plaintiff reported having ups and downs, getting depressed and isolating herself from others, R. 985; (2) had difficulties managing her depressive symptoms that affect her behavior, R. 985–86; (3) reported having two "not good" days even in a "better week," R. 986; (4) in another week reported having ups and downs and two days of isolation and depression, R. 987; (5) reported ups and downs in another week with three bad days of depression and isolation, including crying and not wanting to talk to family, R. 996; (6) reported depression related to weight, R. 997; (7) experienced auditory hallucinations encouraging violence and appeared to have increased difficulties managing her symptoms of depression, R. 1092, 1101; (8) reported being in a "downs moment," isolated and lacking energy or motivation, R. 1326; (9) continued to isolate herself, remain inactive, have no energy, be in a "down mood," and spend

10

most of her time sleeping, R. 1328; and (10) continued to have difficulties managing her symptoms of depression, anxiety, mood, and behavior, R. 1328, 1339, 1347. The ALJ impermissibly glossed over these records.

In doing so, the ALJ demonstrated a "regrettably all-too-common[ ] misunderstanding of mental illness." *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011). As the Seventh Circuit has repeatedly recognized, "a person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about her overall condition." *Id.* (citations omitted). That Plaintiff reported doing well or feeling better at several appointments is to be expected of someone with her mental conditions. *See Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010). Those high points do not alone provide a basis for rejecting a treating source's opinion on grounds of inconsistency with the record. To be sure, the ALJ here acknowledged that Plaintiff's mood fluctuated, that on certain occasions she experienced symptoms of schizophrenia and anxiety, and that on one occasion she reported being depressed one day per week. But these symptoms are few instances among many demonstrating the recurring nature of Plaintiff's mental conditions.

Given the recurrent nature of Plaintiff's mental conditions, as reflected in the treatment notes, the ALJ's statement that Plaintiff's conditions were "managed with treatment" is inaccurate. Symptoms that continue to recur and require more and changing treatment are hardly "managed," and in any event, positive responses to some treatment does not equate to an ability to sustain full-time competitive employment. As the Seventh Circuit has recognized, "[t]here can be a great difference between a patient who responds to treatment and one who is able to enter the workforce." *Scott*, 647 F.3d at 739. Although Kroner and Dr. Reyes' treatment notes showed that Plaintiff responded to treatment at times, she nevertheless continued to experience mood fluctuations,

11

depression, and anxiety. *Id.* at 739–40. The fact that Plaintiff "received conservative management of her . . . mental conditions" is therefore not a "good reason" for discounting Dr. Reyes' opinion.

Lastly, the ALJ made no effort to consider the regulatory factors other than consistency in deciding the weight to assign Dr. Reyes' opinion. *See* 20 C.F.R. § 416.927(c); *Wehrle v. Berryhill*, No. 17-cv-5451, 2018 WL 3574823, at *6 (N.D. Ill. July 25, 2018) ("If she does not discuss each factor explicitly, the ALJ should demonstrate that she is aware of and has considered the relevant factors." (citing *Schreiber v. Colvin*, 519 F. App'x 951, 959 (7th Cir. 2013)). Especially given the length of Dr. Reyes' treatment relationship with Plaintiff and the frequency of examination, consideration of these regulatory factors would seem to lend Dr. Reyes' opinion more weight. The same can be said for Kroner's 2014 opinion, which is analyzed using the same factors, though not every factor need be considered. § 416.927(f)(1). The only factor the ALJ considered was consistency. Not only do the other regulatory factors seem relevant and deserving of analysis, but as discussed above, the ALJ's consideration of the consistency factor was flawed and not sufficient to discount Dr. Reyes' opinion.

Because the case must be remanded for a reevaluation of Dr. Reyes' opinion, the court need not address the other issues Plaintiff raises for review. The court notes, however, that Plaintiff's criticism that the ALJ failed to account for her variable functioning in the RFC determination relates to the issue the court has addressed. In reevaluating Dr. Reyes' opinion in light of the regulatory factors and the entire record, the ALJ must remember that "a snapshot of any single moment says little about [Plaintiff's] overall condition" and that positive responses to treatment do not necessarily equate to an ability to work. *See Punzio*, 630 F.3d at 710; *Scott*, 647 F.3d at 739. With these

principles in mind, it may be that the ALJ's reevaluation resolves the variable functioning issue and perhaps also Plaintiff's criticism of the ALJ's credibility assessment.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **REVERSED** and **REMANDED** to the SSA pursuant to 42 U.S.C. § 405(g) (sentence four) for further proceedings consistent with this order. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** this   23rd   day of September, 2019.

                                                    s/ Willliam C. Griesbach
                                                   William C. Griesbach, Chief Judge
                                                   United States District Court